**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**CHRISTOPHER HAWKINS,**

Plaintiff,

v.

**CITY OF EUGENE** and **JOHN DOES I-V**,

Defendants.

Case No. 6:24-cv-00951-JR

**OPINION AND ORDER ADOPTING IN PART FINDINGS & RECOMMENDATIONS**

John Burgess and Carl Post, Post Burgess, 3825 NE Hancock St., Suite 102, Portland, OR 97212. Attorneys for Plaintiff.

Ben Miller, Eugene City Attorney's Office, 500 East Fourth Avenue, Suite 301, Eugene, OR 97401. Attorney for Defendant.

**IMMERGUT, District Judge.**

Before this Court is a Motion for Summary Judgment ("Mot. Sum. J.") filed by Defendant, the City of Eugene ("the City"). ECF 56.[1] On April 24, 2026, Judge Russo issued her Findings & Recommendation ("F&R"), ECF 76, recommending that the motion should be

[1] As noted by the F&R, Plaintiff "neglected to timely substitute the John Doe defendants[.]" Findings and Recommendation, ECF 76 at 1 n.1. Accordingly, the only remaining Defendant is the City of Eugene.

"denied as to [P]laintiff's express policy/failure to train theories as they relate to the use of PepperBall launchers and granted in all other respects." *Id.* at 15. Defendant filed Objections ("Obj. F&R"), ECF 79, on May 8, 2026, and Plaintiff responded ("Resp. Obj. F&R"), ECF 85, on August 14, 2026.

For the reasons stated below, this Court ADOPTS IN PART the F&R's FINDINGS, but agrees with the F&R's conclusion to GRANT IN PART and DENY IN PART Defendant's Motion for Summary Judgment, ECF 56. This Court adopts all recommendations of the F&R except the recommendation that this Court find that "the City's 'Use of Force' and 'Pain Compliance' policies are fatally flawed." [2] F&R, ECF 76 at 12. Instead, this Court finds that only the Pain Compliance Policy (policy 808.3.1) may be facially deficient, but the City's other use of force policies, including the City's policies regarding general Use of Force (policy 800), PepperBall Projectiles (policy 804), and Impact Weapons (policy 808.4), are not "fatally flawed," F&R, ECF 76 at 12, nor "obviously, facially deficient." *Hyun Ju Park Park v. City & County of Honolulu*, 952 F.3d 1136, 1142 (9th Cir. 2020). Nevertheless, because there remain genuine disputes of fact that determine the applicability and constitutionality of the Pain Compliance policy, and whether that policy was the moving force behind any constitutional violation, this Court GRANTS summary judgment to Defendant on the ratification and pattern or practice claims, but DENIES summary judgment on the express policy and failure to train claims.

---

[2] This Court construes Judge Russo's use of "fatally flawed" to be synonymous with the standard of "facially deficient" used to demonstrate deliberate indifference. *See Hyun Ju Park v. City & County of Honolulu*, 952 F.3d 1136, 1142 (9th Cir. 2020).

## BACKGROUND

This Court adopts the Background from the F&R, ECF 76 at 2–5.

## STANDARDS

Under the Federal Magistrates Act ("Act"), the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If a party objects to a magistrate judge's F&R, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* But the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the F&R to which no objections are addressed. See *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Nevertheless, the Act "does not preclude further review by the district judge, sua sponte" whether de novo or under another standard. *Thomas*, 474 U.S. at 154.

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). The substantive law on a claim or defense determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the genuineness of the dispute, and all reasonable doubts should be resolved against the moving party. *Id.*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

**DISCUSSION**

This Court adopts the F&R's recommendation granting summary judgment to Defendant on the ratification and pattern or practice claims and denying summary judgment on the express policy and training claims. There exist genuine disputes of material fact that prevent this Court from determining as a matter of law that Defendant's Pain Compliance policy and training were not deliberately indifferent to the rights of Plaintiff.

To establish municipal liability under 42 U.S.C. § 1983, the plaintiff must demonstrate: (1) he was deprived of a constitutional right;[3] (2) the municipality had a policy, custom, or practice; (3) the policy, custom, or practice was the "moving force" behind the constitutional violation; and (4) the policy, custom, or practice amounted to deliberate indifference of the plaintiff's constitutional rights. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted); *see also Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 694 (1978).[4]

Presenting the facts in the light most favorable to Plaintiff, the question at the core of the case here is: did the City's policies or training allow for officers to deploy PepperBalls on a

---

[3] Defendant concedes for the purposes of this motion that there are genuine disputes of material fact as to whether the use of force in this instance was constitutional. *See* Mot. Sum. J., ECF 56 at 4. There remains a genuine issue of fact for trial as to the threat that the Plaintiff posed to officers or of flight at the time of the arrest and whether the use of force was in fact constitutional under the totality of the circumstances. *See generally Graham v. Connor*, 490 U.S. 386 (1989).

[4] Some Ninth Circuit precedent could be read to suggest that deliberate indifference is not a requirement for a *Monell* claim where the *Monell* claim is based on an action as opposed to a failure to act. *Hyun Ju Park*, 952 F.3d at 1141. Assuming without deciding that such an exception exists, it is inapplicable here. That exception applies "[w]here a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1144 (9th Cir. 2012) (cleaned up). That exception is inapplicable where a Plaintiff alleges a "failure to implement procedural safeguards to prevent constitutional violations." *Id.* at 1143. Here, Plaintiff alleges that the City permitted or failed to prevent unconstitutional conduct, not that it affirmatively directed such conduct. *See* F&R, ECF 76 at 15. Therefore, the familiar deliberate indifference requirement remains in place.

passively resistant or a fully compliant individual, and if so, were those policies or training the moving force[5] of the alleged constitutional violation? This Court finds that there are genuine issues of fact which preclude a determination as a matter of law that the City was deliberately indifferent through its policies or training. Therefore, the City's motion for summary judgment should be denied as to those claims.

**A. Express Policy**

Plaintiff contends that the "City's policies governing resistance, pain compliance, and PepperBall use" caused the unconstitutional use of force against Plaintiff. Resp. Obj. F&R, ECF at 85 at 6; *see also* Response in Opposition to Motion for Summary Judgment ("Opp. Mot. Sum. J."), ECF 70 at 20. First, Plaintiff argues that the City's PepperBall policy "does not define the resistance terms it uses or spell out how officers should apply them in the field." Opp. Mot. Sum. J., ECF 70 at 14. Similarly, Plaintiff takes issue with the City's Use of Force policy, which he contends "does not define 'passive resistance' or explain how officers should distinguish compliance from passive resistance when selecting force." *Id.* at 14–15. Plaintiff further states that the inadequacy of these policies is evidenced by officer depositions, where officers did not consistently describe when pepper balls were an appropriate application of force, with some

[5] This Court notes that there is also a question as to whether any of the policies governing resistance even would apply—and hence would be the "moving force" of officers' actions, *Dougherty*, 654 F.3d at 900—if Plaintiff was indeed fully compliant with the officers' orders as Plaintiff asserts. *See* Opp. Mot. Sum. J., ECF 70 at 9. The policies explicitly only permit the use of force against "resistant" individuals, and Plaintiff asserts that he was fully compliant. However, a reasonable jury could find that what the officers thought to be "passive resistance"—in line with policy and training—was in fact a fully compliant individual who was not moving quickly enough. Given the numerous factual questions that must be decided at trial, this Court assumes for the purposes of this motion that the policies are applicable. Further, this Court refers to Plaintiff throughout this opinion as "passively resistant," though notes, in line with this footnote, that an issue for trial would be whether Plaintiff was resistant, and if not, whether officers construed a compliant individual to be "passively resistant" given the City's policies and training.

apparently expressing that pepper ball force was appropriate in situations courts have shown it to be unconstitutional. *Id*. at 20–23.

On the other hand, Defendant argues that there is no express, unconstitutional policy in place, and that, in fact, "the City has express policies against the use of excessive force," citing the Use of Force (800), Force Response Reporting (801), PepperBall (804), and Handcuffing, Control Holds, & Impact Weapons (808) policies. Mot. Sum. J., ECF 56 at 5 (cleaned up).

The F&R broadly concludes that the City's Use of Force (800) and Pain Compliance (808.3.1) policies are "fatally flawed" because they leave room for an interpretation that pepper balls can be used in situations in which the Ninth Circuit has ruled such use is unconstitutional. F&R, ECF 76 at 12–13. In reaching that conclusion, Judge Russo specifically analyzed three City policies: Use of Force (800), PepperBall (804), and Pain Compliance (808.3.1) policies. *Id.* at 10–12. This Court also considers the Impact Weapons (808.4) policy, as raised by Defendant.[6] *See* Handcuffing, Control Holds, & Impact Weapons – Impact Weapons ("Policy 808.4"), ECF 57-5 at 3. In Defendant's Objections to the F&R, the City asserted—for the first time—that the Impact Weapons policy also governs pepper ball deployment. Obj. F&R, ECF 79 at 5.

This Court finds that the City's Use of Force, PepperBall Projectile, and Impact Weapons policies—which appear to govern the use of pepper balls—are not "obviously, facially deficient." *Hyun Ju Park*, 952 F.3d at 1142. However, a reasonable jury could find that the Pain

[6] In its Objections to the F&R, Defendant notes that "Policy 808.4 which at the time governed impact weapons – of which PepperBall launchers are a subset – specifically prohibited their use 'to strike persons engaged only in passive resistance …'" Obj. F&R, ECF 79 at 5. Although Defendant cites the Wolgamott Deposition in the record to support this proposition, *id.*, which was part of the record before Judge Russo, Defendant specifically raised this argument about the Impact Weapons Policy for the first time in its Objections to the F&R. As such, Judge Russo did not address the Impact Weapons policy. Plaintiffs did not address the policy in its Response to the City's Objections. *See generally* Resp. Obj. F&R, ECF 85.

Compliance policy could permit the unconstitutional use of pepper ball force against passively resistant individuals; thus, the interpretation and application of this policy is in genuine dispute and cannot be determined on summary judgment.

A municipality's policy or practice[7] is deliberately indifferent to citizens' constitutional rights "when the need 'for more or different' action 'is so obvious, and the inadequacy [of the existing practice is] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Hyun Ju Park*, 952 F.3d at 1141 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989)). The deliberate indifference inquiry for municipal liability is objective. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (en banc); *Farmer v. Brennan*, 511 U.S. 825, 841 (1994) ("It would be hard to describe the *Canton* understanding of deliberate indifference, permitting liability to be premised on obviousness or constructive notice, as anything but objective.") In other words, a municipality must be *on notice* that something is so wrong with their policy that it is likely to result in a constitutional violation. Typically, for a municipality to be on notice of the unconstitutionality of its policies, plaintiffs "must ordinarily point to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." *Hyun Ju Park*, 952 F.3d at 1142 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). However, it could be the case that a policy could be "so facially deficient that any reasonable policymaker would recognize the need to take

[7] As noted in the F&R, Plaintiff does not allege a "pattern of prior, similar violations" sufficient to constitute a pattern or practice claim. *Hyun Ju Park*, 952 F.3d at 1141; F&R, ECF 76 at 8 ("Plaintiff has apparently abandoned [the pattern/practice] theory insofar as he now characterizes this is a 'single incident' case and otherwise does not oppose the City's arguments."). Therefore, this Court only considers the express policy claim as a "single incident" claim.

action" because plaintiff's "federally protected rights would likely be violated if they failed to act." *Id.* at 1141–42. Plaintiff relies exclusively on the latter route to *Monell* liability.

Thus, the question is whether the City's Use of Force, PepperBall, Impact Weapons, and Pain Compliance policies are "obviously, facially deficient." *Id.* at 1142. This Court concludes that the City's Use of Force, PepperBall, and Impact Weapons policy are not "facially deficient." *Id.* However, there are genuine disputes of fact as to how officers interpreted the Pain Compliance policy, and whether it reasonably could be interpreted to permit the use of pepper balls against Plaintiff. Thus, a jury must determine the contours of this policy to determine "if the need for more or different action is so obvious, and the inadequacy" of the Pain Compliance policy, as applied to pepper balls, "so likely to result in the violation of constitutional rights" that the City's policymakers could "reasonably be said to have been deliberately indifferent to the need." *Id.* (cleaned up).

**1. Policy Language**

The policies at issue are as follows:

**USE OF FORCE**
**800.1 Purpose and Scope**
The purpose of this policy is to provide officers of this department with guidelines on the reasonable use of force. While there is no way to specify the exact amount or type of reasonable force to be applied in every situation, each officer is expected to use these guidelines to make such decisions in a professional, impartial, and reasonable manner. This policy is intended to be used in concert with other department policies related to the use of force. …

**800.2 Use of Force by Officers**
It is the policy of this department that officers will use only that force that reasonably appears necessary, given the totality of the circumstances perceived by the officer at the time of the event, to effectively gain control of an incident. …

**800.2.1 Force in Making an Arrest or Preventing Escape**
Pursuant to *ORS 161.233*, a peace officer is justified in using physical force upon another person only when and to the extent that the officer reasonably believes it necessary [] [t]o make an arrest . . .

Use of Force (Policy 800), ECF 57-2 at 1–2.

> **804 PEPPERBALL PROJECTILES**
> **804.1 Purpose and Scope**
> PepperBall projectiles represent another less-lethal force option available for use by trained officers to help defend themselves or to gain compliance of resistant or aggressive individuals. …
>
> **804.2 Responsibilities and Procedures for All Personnel**
> **A. Generally**…
> 3. PepperBall launchers may only be employed in a manner consistent with the department's policy on use of force (refer to Policy 800).
> 4. Only personnel who have completed the prescribed course of instruction on the use of the PepperBall system are authorized to carry or use it. …
>
> **B. Usage Criteria**…
> 3. PepperBall projectiles may be used to disperse crowds, and when reasonably necessary to defend persons or to assist in effecting an arrest.

PepperBall Projectiles ("Policy 804"), ECF 57-4 at 1–2.

> **808 HANDCUFFING, CONTROL HOLDS, & IMPACT WEAPONS**
>
> **808.1 Purpose and Scope**
> No policy, however specific, can substitute for good decision-making during use of force events. There is no way to specify the exact amount or type of force to be applied in a given situation. However, every member of the Department is expected to use this policy as a guideline for making well-informed and sound decisions in a professional and impartial manner, that are in accordance with *Policy 800 – Use of Force*. …
>
> **808.3 Control Holds**
> Control holds are techniques designed to temporarily disable or stop a subject's resistance or flight without causing death or serious physical injury. … Officers who employ control holds are expected to use them as needed to safely and effectively bring an incident under control consistent with the *Policy 800 - Use of Force* and the training they have received from the department. …
>
> **808.3.1 Pain Compliance**
> Pain compliance techniques may be very effective in controlling a passive, static, or actively resisting individual. Officers may only apply those pain compliance techniques for which the officer has received department-approved training and only when the officer reasonably believes that the use of such technique appears necessary to further a legitimate law enforcement purpose. …

Handcuffing, Control Holds, & Impact Weapons – Pain Compliance ("Policy 808.3.1"), ECF 57-5 at 1–3.

**808 HANDCUFFING, CONTROL HOLDS, & IMPACT WEAPONS**

**808.4 Impact Weapons**
Impact weapons should not be used to strike persons engaged only in passive resistance, nor shall impact weapons be used punitively, or to intimidate or coerce subjects into doing anything, except to overcome their resistance to being taken into custody.

Policy 808.4, ECF 57-5 at 3.

**2. Use of Force, PepperBall, and Impact Weapon Policies**

The Use of Force, PepperBall, and Impact Weapons policies are not "obviously, facially deficient." *Hyun Ju Park*, 952 F.3d at 1142. First, the Use of Force policy is not "facially deficient." *Id.* Nothing in the Use of Force policy appears to have driven the allegedly unconstitutional actions against Plaintiff. There is also nothing "so obvious" and "inadequa[te]" that could be said to result in deliberate indifference to the rights of individuals officers interact with. *Id.* at 1141–42. Nor does Plaintiff even assert this. Indeed, in his response to the motion for summary judgment, Plaintiff writes that "EPD Policy 800 [Use of Force] describes itself as general guidance rather than a set of fixed rules." Opp. Mot. Sum. J., ECF 70 at 14. At the core of his claims, Plaintiff takes issue with the lack of definition of "passive resistance" as it applies to the use of pepper balls. Even though the PepperBall and Pain Compliance policies cross-reference the Use of Force policy—*see* Policy 804, ECF 57-4 at 1; Policy 808.3, ECF 57-5 at 1–3—the fact that the term "passive resistance" does not appear in the Use of Force policy does not make it "so obvious[ly]" inadequate and "so likely to result in the violation of constitutional rights" as to prove deliberate indifference. *Hyun Ju Park*, 952 F.3d at 1141–42. In fact, "passive resistance" has not been clearly defined in the case law. *Sitbon v. City of Portland*, No. 3:22-CV-1148-SI, 2025 WL 1736833 at *9 (D. Or. June 23, 2025) (citing cases from the Ninth Circuit suggesting "that a variety of behavior may constitute passive resistance"). Thus, this Court

cannot find this policy to be "facially deficient," and the City was not deliberately indifferent with respect to this Use of Force policy. *See id.*

Similarly, the PepperBall[8] and Impact Weapons policies are not "obviously, facially deficient." *Id.* at 1142. Plaintiff contends that the PepperBall policy "authorizes PepperBall projectiles as a 'less-lethal force option' to 'gain compliance of resistant or aggressive individuals,' but does not define 'resistant,' and it does not address 'passive resistance' or distinguish it from compliance." Opp. Mot. Sum. J., ECF 70 at 14 (quoting Policy 804, ECF 54-7 at 1–2). However, as Defendants assert, and as is uncontested in the record, pepper balls appear to be a type of impact weapon; thus, the PepperBall policy is limited by the Impact Weapons policy, which specifically prohibits "strik[ing] persons engaged only in passive resistance." Policy 808.4, ECF 57-5 at 3; *see also* Deposition of Wolgamott, 80-2 at 3 (referring to the impact weapon policy when asked about pepper balls); Obj. F&R, ECF 79 at 5. Therefore, neither the PepperBall nor Impact Weapon policies are "so obvious[ly inadequate], and the inadequacy [of

---

[8] In his deposition, Officer Solesbee explained that only the SWAT team and crowd control team are trained on and can use pepper balls. Declaration of John David Burgess ("Burgess Decl."), Exhibit B: Deposition of Officer Solesbee ("Solesbee Depo."), ECF 71 at 95. This limits the applicability of the pepper ball policy to SWAT and crowd control contexts. Therefore, with respect to the SWAT context—which is relevant to Plaintiff's arrest—the PepperBall policy appears to apply only in limited situations where a greater threat is present, not in low threat situations involving what the Ninth Circuit has found to constitute "passive resistance." *See, e.g. Nelson v. City of Davis*, 685 F.3d 867, 880–81 (9th Cir. 2012) (finding pepper ball deployment unconstitutional where there was, in most significant part, no threat to the officers); *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1165 (9th Cir. 2011) (finding that when "a suspect's disobedience of a police officer takes the form of passive noncompliance that creates a minimal disturbance and *indicates no threat*, immediate or otherwise, to the officer or others, it will not, *without more*, give rise to a governmental interest in the use of significant force") (emphasis added); *Bryan v. MacPherson*, 630 F.3d 805, 829 (9th Cir. 2010) (finding little basis for use of physical force where "[n]one of the offenses for which [Plaintiff] was cited or of which [Plaintiff] was suspected [was] inherently dangerous or violent, and as already discussed, [Plaintiff] posed little to no safety threat.").

existing practice] so likely to result in the violation of constitutional rights" as to demonstrate the City's deliberate indifference. *Hyun Ju Park*, 952 F.3d at 1141.

**3. Pain Compliance Policy**

This Court cannot determine as a matter of law whether the Pain Compliance policy was the "moving force" of the constitutional violation or constituted deliberate indifference by City policymakers. *Dougherty*, 654 F.3d at 900; *see also Monell*, 436 U.S. at 694. As discussed above, in order to prove a constitutional violation under *Monell*, the policy must not only be facially deficient, but it must also be "a moving force behind a violation of constitutional rights." *Dougherty*, 654 F.3d at 900 (citing *Monell*, 436 U.S. at 694). There are material issues of fact as to whether the Pain Compliance Policy was the moving force behind the violation: did officers apply the Pain Compliance policy when they deployed pepper balls against Plaintiff, an allegedly "passively resistant" individual?

Assuming the policy applies, as this Court must, given the disputes of fact as to its applicability, there are genuine disputes of fact as to how the policy should be read, and if it permits pepper ball use against passively resistant individuals. The record—which includes multiple officer declarations—demonstrates that officers have different understandings of when pepper balls can be deployed under the policy.[9] Because there are genuine questions of fact as to

[9] *See, e.g.* Burgess Decl., Exhibit B: Solesbee Depo., ECF 71 at 73, 96 (describing pepper balls as "a pain compliance tool" which means "subjecting them to pain to induce them to do what you're asking them to do" but that "if you gave me a circumstance and everybody agreed that it was passive resisting, no, we can't use pepper ball to do pain compliance on that person, within our policy."); *id.,* Exhibit C: Deposition of Youngbloom at 127–28 (describing the pepperball policy as " used against passive[ly resistant] or aggressive suspects [for . . .] pain compliance" and that passive resistance characterizes a situation where "someone is not following commands or is not compliant."); *id.* at Exhibit D: Deposition of Lowen at 148 (defining "passive resistance" as "resistance that is not accompanied by any vocalization, body language…circumstances that reduce a lot of threat behavior. The word I've heard applied to this is simply a dead weight individual…a textbook example…would be [a protestor.]"); *id.*, Exhibit

how the Pain Compliance policy should be read in conjunction with other policies, how the officers understood and applied the policy, and, if the officers did even apply this policy at the time of the incident with Plaintiff, this Court cannot determine as a matter of law that the policy was not a moving force of violations against Plaintiff or if the City was deliberately indifferent in promulgating this policy.

Therefore, although this Court finds the Use of Force, PepperBall, and Impact Weapon policies are not "obviously, facially deficient," *Hyun Ju Park*, 952 F.3d at 1142, there are too many outstanding genuine issues of material fact for this Court at this stage to make a determination regarding the Pain Compliance policy. There are also factual questions as to which policies the officers actually relied on during the incident and whether the officers' conduct was driven by the Pain Compliance policy. Therefore, Plaintiff's explicit policy claim should not be dismissed on summary judgment.

**B. Training**

Plaintiff claims that the City is deliberately indifferent in training officers, as evidenced by the officers in depositions being unable to articulate "an accurate, legally consistent understanding of passive resistance or how that category limits significant force." Opp. Mot. Sum. J., ECF 70 at 20, 28. Defendant argues that the City was not deliberately indifferent in training its officers and that officers are "properly trained on the standards for use of force." Mot. Sum. J., ECF 56 at 6–8. Defendant further contends that the City trains officers on what resistance means and when pepper ball deployment is lawful. Repl. to Mot. Sum. J., ECF 75 at 7. This Court finds that there is a genuine issue of fact for the jury to decide as to whether officers

F: Deposition of DeWitt at 257 (describing passive resistance as "being "fairly similar to somebody that's…not moving or trying to hold their arm or do anything…if they're dead weight would be kind of the example.").

were trained on the constitutional limits of pepper ball use, specifically with respect to passively resistant individuals. Thus, summary judgment cannot be granted to Defendant on this claim.

A city can be held liable for a failure to train its officers where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. It is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (cleaned up). Plaintiffs may satisfy this notice prong through a single-instance—i.e. without showing a pattern of constitutional violations—if the violation of rights is "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle [a] recurring situation[]." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (cleaned up). However, still, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62. It is also not enough to simply say that training could have been better. *City of Canton,* 489 U.S at 391 (explaining that it does not "suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."); *see also Perez v. City of Fresno*, 98 F.4th 919, 932 (9th Cir. 2024).

The current record offers conflicting evidence as to the training of the officers. Although it is clear that officers receive training prior to being certified to deploy pepper balls—*see, e.g.* Policy 804, ECF 57-4; Exhibit E Salsbury Depo at 202, Exhibit D Lowen Depo at 146—there are genuine questions of fact as to whether officers were trained on "passive resistance" and the

limits of the use of pepper balls in that context. Some officers did attest in their depositions that they believed, based on their training, that pepper ball deployment is inappropriate in situations of passive resistance. *See, e.g.* Burgess Decl., Exhibit B: Solesbee Depo., ECF 71 at 96 ("[If] you gave me a circumstance and everybody agreed that it was passive resisting, no, we can't use pepper ball to do pain compliance on that person, within our policy" but that officers are "trained to use the pepper ball launcher as a method of inflicting pain compliance."); *id.* at Exhibit E: Salsbury Deposition at 202 (stating that officers are generally "trained to assess whether a suspect is complying or resisting before using force" and that pepper ball training includes "proper use, deployment, and case law related to those issues"). However, one officer did conclude that pepper balls were "used against passive[ly resistant] or aggressive suspects for pain compliance." Burgess Decl., Exhibit C: Deposition of Youngbloom, ECF 71 at 127–128. This conflicting record evidences genuine issues of fact regarding the scope and extent of pepper ball training with respect to passive resistance under the pain compliance policy that cannot be resolved at summary judgment.

## CONCLUSION

This Court has reviewed the F&R, ECF 76; Defendant's Objections to the F&R, ECF 79; and Plaintiff's Response to Defendant's Objections, ECF 85. Based on that review, the F&R, ECF 79, is ADOPTED IN PART as discussed above, but this Court agrees with the F&R to GRANT IN PART and DENY IN PART Defendant's Motion for Summary Judgment, ECF 56. This Court GRANTS summary judgment to Defendant on the ratification and pattern or practice claims, but DENIES summary judgment on the express policy and failure to train claims.

**IT IS SO ORDERED**.

DATED this 24th day of September, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge